IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| DIANE JEZEK, LAURA MORITZ, and GEORGE GILLESPIE, on behalf of themselves and a class, | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| CARECREDIT, LLC, and GE MONEY BANK, | ) ) ) |
| Defendants. | ) ) |

## COMPLAINT – CLASS ACTION

### INTRODUCTION

1. Plaintiffs bring this action to secure redress for abusive practices relating to health care financing.

### JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. 1332(d).

3. The amount in controversy exceeds $5 million, exclusive of interest and costs, on a classwide basis.

4. Venue in this District is proper because a material part of the events complained of occurred here and defendants do business here.

### PARTIES

5. Plaintiffs Diane Jezek and Laura Moritz are citizens and residents of Lyons, Illinois.

6. Plaintiff George Gillespie is a citizen and resident of Kouts, Indiana.

7. Defendant CareCredit, LLC is a limited liability company organized under California law that has its principal offices at 2995 Red Hill Avenue, Suite 100, Costa Mesa, CA 92626.

8. GE Money Bank is a federally-chartered corporation with principal offices

1

at 170 West Election Road, Suite 125, Draper, Utah 84020. It issues the CareCredit credit card.

9. CareCredit is under common ownership and control with GE Money Bank and (http://www.carecredit.com/about.html) is held out to the public as a "division" of GE Money Bank.

10. Consumers are directed to make payments and send inquiries relating to the CareCredit credit card to GE Money Bank.

### FACTS RELATING TO JEZEK AND MORITZ

11. On August 20, 2010, Jezek and Moritz received free heart scans from Heart Check America, through which a physician, Michael Yuz, M.D., practices.

12. The relationship between plaintiffs Jezek and Moritz on the one hand and Heart Check America and Dr. Yuz was fiduciary in nature.

13. On August 20, 2010, Jezek and Moritz were shown a presentation promoting the sale of annual heart scans and body scans.

14. On August 20, 2010 Jezek and Moritz signed a 10-year Premium Plan contract for annual heart scans and bi-annual body scans, amounting to $4,694 (Exhibit A).

15. The contract was paid for through a CareCredit credit card which Heart Check America arranged (Exhibit B).

16. Plaintiffs' Jezek's and Moritz's heart scans were reported abnormal, and plaintiffs Jezek and Moritz were advised to contact a physician as soon as possible (Exhibit C).

17. Plaintiff Jezek brought the heart scan results to her regular doctor, who noted that the reports were not definite, and concluded that the scan was not beneficial.

18. Plaintiffs Jezek and Moritz attempted thereafter to cancel their contracts without success. Heart Check America refused to cancel because it had already been paid in full by CareCredit for the Premium Plan.

### FACTS RELATING TO GILLESPIE

19. In late May 2006, plaintiff Gillespie required dental treatment at

a cost of approximately $2,500.

20. Plaintiff Gillespie sought treatment from Accent Dental, in Valparaiso, Indiana.

21. The relationship between plaintiff Gillespie and the dentist was fiduciary in nature.

22. Accent Dental offered to arrange and did arrange financing for the work from defendants.

23. The arrangement took the form of a CareCredit credit card.

24. The CareCredit credit card is a credit card issued through medical providers and usable only for health care procedures.

25. The mailer in which the card was sent states, "Use Your Card For Treatments & Procedures At Over 55,000 Healthcare Providers!"

## FACTS – GENERAL

26. On information and belief, over 200,000 persons have been issued CareCredit credit cards through medical providers.

27. Defendants engaged in a policy and practice of offering money and things of value to medical providers to steer patients to defendants for the financing of medical procedures.

28. In particular, defendants charged medical providers a fee for the right to offer Care Credit financing, and then rebate part of the fee based on the volume of business generated through Care Credit financing.

29. Defendants also engaged in a policy and practice of advancing funds to medical providers for work not yet performed by the providers, debiting the patients' accounts for such funds, and charging the patients finance charges on such funds.

30. Plaintiffs, unaware of this practice and trusting that Accent Dental, Heart Check America, and their accredited physicians were acting in their interests, accepted the

3

financing offered.

31. No disclosure of the incentives was made to plaintiffs.

32. Plaintiffs had no knowledge or reason to know that defendants offered pecuniary incentives to medical providers until they contacted counsel who were aware of an investigation.

33. Defendants paid Accent Dental and Heart Check immediately, even though payment was not due prior to the performance of the work.

34. Plaintiff Gillespie was charged finance charges for the financing, including amounts advanced to Accent Dental for work not yet performed by Accent Dental.

35. Plaintiffs Jezek and Moritz were charged finance charges for the financing, including amounts advanced to Heart Check America for work not yet performed by Heart Check America, work that would not be performed for years, and for which Plaintiffs had not agreed to.

36. The financing obtained by plaintiffs and others similarly situated was unnecessarily expensive because (a) defendants increased the annual percentage rate to account for the pecuniary incentives offered to medical providers plus profit on the incentives and (b) plaintiffs were required to pay finance charges on money paid by defendants to Accent Dental and Heart Check America for work not yet performed by Accent Dental and Heart Check America.

37. On information and belief, the cardholder agreement that defendants sent plaintiffs and others similarly situated, after the medical provider arranged financing with defendants, contained an arbitration provision.

38. Plaintiffs contend that such arbitration provisions were imposed after the inception of a fiduciary relationship through misuse of the fiduciary relationship, and are unenforceable.

## CLASS ALLEGATIONS

39. Pursuant to Fed. R.Civ.P. 23(a) and (b)(3), plaintiffs bring this action on behalf of a class.

40. The class consists of (a) all natural persons (b) in the United States (c) who have used CareCredit cards (d) to finance health care services (e) on or after a date five years prior to the filing of this action.

41. The class is so numerous that joinder is impracticable.

42. There are more than 100,000 natural persons in the United States who have used CareCredit cards to finance health care services on or after a date five years prior to the filing of this action.

43. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common questions include:

   a. Whether a fiduciary duty exists;

   b. Whether defendants' incentive payments or advance payments induce a breach of fiduciary duty;

   c. The appropriate remedy.

44. Plaintiffs' claims are typical of the claims of the class members. All are based on the same factual and legal theories.

45. Plaintiffs will fairly and adequately represent the interests of the class members. Plaintiffs have retained counsel experienced in consumer credit and class action cases.

46. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## COUNT I – INDUCING BREACH OF FIDUCIARY DUTY

47. Plaintiffs incorporates paragraphs 1-46.

48. Defendants induced the health care providers of plaintiffs and the class members to breach their fiduciary obligations to the plaintiffs and the class members by offering them financial incentives if they induced plaintiffs and the class members to sign up for defendants' financing and by paying them in advance for work not yet performed.

WHEREFORE, the Court should enter judgment in favor of plaintiffs and the class members and against defendants for:

    a. Appropriate compensatory and punitive damages, including all finance charges on amounts advanced for work not yet performed and disgorgement of all incentives paid to the fiduciaries;

    b. Costs;

    c. Such other of further relief as the court deems proper.

## COUNT II – DECLARATORY RELIEF AGAINST ARBITRATION CLAUSE

49. Plaintiffs incorporate paragraphs 1-46.

50. After the medical providers entered into a fiduciary relationship with the plaintiffs and the class members, defendants had them present plaintiffs and the class members with documents purporting to require plaintiffs and the class members to arbitrate any claims.

51. The purpose of the clause was to insulate defendants from claims.

52. The addition of the clause after the inception of the fiduciary relationship was unfair.

WHEREFORE, the Court should enter judgment in favor of plaintiffs and the class members and against defendants for:

    a. A declaration that the arbitration clause is ineffective;

    b. Costs;

c. Such other of further relief as the court deems proper.

## COUNT III – ILLINOIS CONSUMER FRAUD ACT

53. Plaintiffs Jezek and Moritz incorporate paragraphs 1-46.

54. Plaintiffs Jezek and Moritz bring Count III on behalf of a class of (a) all natural persons with (b) with Illinois addresses (c) who have used CareCredit cards (d) to finance health care services (e) on or after a date three years prior to the filing of this action.

55. Defendants, acting in concert, engaged in unfair and deceptive acts and practices, in violation of 815 ILCS 505/2, by:

a. engaging in a policy and practice of offering money and things of value to medical providers to steer patients to defendants for the financing of medical procedures;

b. charging medical providers a fee for the right to offer CareCredit financing, and then rebate part of the fee based on the volume of business generated through CareCredit financing;

c. engaging in a policy and practice of advancing funds to medical providers for work not yet performed by the providers, debiting the patients' accounts for such funds, and charging the patients finance charges on such funds.

56. Defendants engaged in such conduct in the course of trade and commerce.

57. Defendants engaged in such conduct for the purpose of taking advantage of and overreaching unsophisticated consumers.

58. The class is so numerous that joinder of all members is not practicable.

59. On information and belief, there are at least 40 individuals with Illinois addresses who have used CareCredit cards to finance health care services within 3 years prior to the filing of this action.

60. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common question is whether defendants' practices are unfair or deceptive.

61. Plaintiffs Jezek's and Moritz's claims are typical of the claims of the sub-class members. All are based on the same factual and legal theories.

62. A class action is appropriate for the fair and efficient adjudication of this claim, in that:

    a. Individual actions are not economically feasible; and

    b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiffs Jezek and Moritz and the sub-class members and against defendants for:

    (1) Compensatory damages;

    (2) Punitive damages;

    (3) Attorney's fees, litigation expenses and costs of suit;

    (4) An injunction restraining defendants from conducting their unlawful lending scheme;

    (5) Such other and further relief as the Court deems proper.

                                          s/ Daniel A. Edelman
                                          Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Zachary A. Jacobs
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

Michael P. McIlree
821 E. Lincolnway, Suite 1
P.O. Box 1446
Valparaiso, IN 46383
(219) 548-1800
(219) 548-5905 (FAX)

9

## **JURY DEMAND**

Plaintiffs demand trial by jury.

                                                s/ Daniel A. Edelman
                                                Daniel A. Edelman

## **NOTICE OF LIEN AND ASSIGNMENT**

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)