# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DIANE JEZEK, LAURA MORITZ, and GEORGE GILLISPIE,<br><br>Plaintiffs,<br><br>v.<br><br>CARECREDIT, LLC, and GE MONEY BANK,<br><br>Defendants. | No. 10 C 7360<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Plaintiffs filed a class action complaint alleging that Defendants used abusive practices relating to health care financing. Defendants have moved to compel arbitration, or in the alternative, dismiss Plaintiffs' complaint. For the following reasons, Defendants' motion to compel arbitration is granted.

## I. STATEMENT OF FACTS

Plaintiffs filed a three-count class action complaint. Count I alleges that Defendants induced health care providers to breach their fiduciary obligations to the plaintiffs by (1) offering them financial incentives if they persuaded plaintiffs and the class members to sign up for Defendants' financing, and (2) paying for them in advance for work not yet performed. Count II seeks declaratory relief against the arbitration clause associated with the CareCredit financing. Count III alleges that Defendants engaged in unfair and deceptive acts and practices in violation of 815 ILCS 505/2.

GE Money Bank is a Federal Savings Association Bank that operates a credit card program known as CareCredit. CareCredit provides financing for elective and other non-emergency healthcare. Plaintiffs allege that Defendants offered things of value to medical providers to steer patients to Defendants for the financing of medical procedures. Specifically, Plaintiffs allege that Defendants charged medical providers a fee for the right to offer financing through CareCredit, and then offered providers a partial rebate on the fee based upon the volume of business generated through CareCredit financing. Additionally, Plaintiffs allege that Defendants advanced funds to medical providers for work not yet performed, and debited patient accounts for such funds. Plaintiffs, trusting that physicians were acting in their interests, accepted the financing offer. Plaintiffs were unaware that Defendants offered incentives to medical providers per volume of business generated through CareCredit. The CareCredit financing agreements all contained an arbitration clause whereby Plaintiffs agreed to arbitrate claims that arise out of the agreement, or relate to relationships that result from the CareCredit account.

Three individual Plaintiffs complain about specific transactions. The first two transactions occurred in Illinois on August 20, 2010. There, Plaintiffs Diane Jezek ("Jezek") and Laura Moritz ("Moritz") received free heart scans from Heart Check America ("HCA"). Plaintiffs signed a 10-year Premium Plan contract for annual heart scans and bi-annual body scans amounting to $4,694.00. Plaintiffs were informed that their HCA heart scans "were reported abnormal" and they were told to "contact a physician as soon as possible." However, when Jezek "brought the heart scan results to her regular doctor, [the regular doctor] noted that the reports were not definite, and concluded that the scan was not beneficial." Thereafter, Jezek and Moritz attempted

to cancel the contracts. HCA allegedly refused the cancellation request because it had already been paid in full by CareCredit for the Premium Plan.

Plaintiff George Gillispie ("Gillispie") alleges that in May 2006, he sought dental treatment in Indiana from Accent Dental. Gillispie received treatment, and Accent Dental arranged for Gillispie to obtain a CareCredit card, upon which a charge for services was placed.

**II. DISCUSSION**

Defendants make two alternative arguments, first asking that Plaintiffs be compelled to arbitrate their claims, and alternatively, seeking dismissal of Plaintiffs' complaint for failure to state a claim upon which relief can be granted. Defendants argue that Plaintiffs should be compelled to arbitrate their claims on two grounds. First, Defendants contend that because Plaintiffs challenge the CareCredit agreement in its entirety, it is a matter for the arbitrator, and not the court. Next, Defendants argue that the arbitration clause is valid and enforceable, and therefore Plaintiffs must arbitrate their claims. Because I find that Plaintiffs must be compelled to arbitrate their claims, I do not reach Defendants' motion to dismiss.

Arbitration can be compelled where: (1) there is a written agreement to arbitrate; (2) the dispute is within the scope of the agreement; and (3) the plaintiffs refused to arbitrate. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). Plaintiffs' Complaint acknowledges that the CareCredit agreement contained an arbitration clause andPlaintiffs do not dispute that their claims fall within the scope of the clause, and that they have refused to arbitrate. They assert, however, that the arbitration clause is invalid and unenforceable for three reasons: (1) it was presented to plaintiffs after a fiduciary physician-patient relationship existed and is presumptively invalid; (2) the arbitration clause and the choice of law provision impermissible

3

limit the patient's rights; (3) neither of the selected arbitrators is available to arbitrate the dispute; and (4) Defendants waived any right to arbitrate by asking this Court to rule on the merits of this claim.

There are two types of validity challenges under § 2 of the Federal Arbitration Act. One is a challenge to the validity of the agreement to arbitrate. The second challenges the contract as a whole. *Rent-A-Center W., Inc. v. Jackson*, 130 S.Ct. 2772 (2010). It is for the arbitrator to determine the validity of a contract as a whole, whereas challenges to an arbitration clause remain with the province of the court. *Rent-A-Center W.*, 130 S.Ct. at 2778; *Janiga v. Questar Capital Corp.*, 615 F.3d 735 (7th Cir. 2010). Here, Plaintiffs allege that their contracts were procured through a breach of fiduciary duty, and that their arbitration clauses are unenforceable because Plaintiffs had pre-existing fiduciary relationships with their healthcare providers that were breached by "arranging" the financing. Plaintiffs argue that, contrary to Defendants' assertions, they are only challenging the validity of the agreement to arbitrate, rather than the contract as a whole. Plaintiffs' argument against the validity of the arbitration clause, however, is that "it has long been recognized that after the inception of a fiduciary relationship, transactions between the fiduciary and the beneficiary are presumptively invalid." Following this theory, it is not simply the arbitration clause that would be invalid, but the entire contract. Accordingly, because the validity of the entire contract is at issue, this remains a matter for the arbitrator, not the court.

Accepting Plaintiffs' contention that they are *only* challenging the validity of the arbitration clause, their arguments as to the arbitration clauses' invalidity nonetheless fail. First, Plaintiffs argue that the arbitration agreement is invalid because it was entered into between a fiduciary and a beneficiary after the inception of the relationship. Plaintiffs contend that the

4

relationship between a healthcare provider and the patient is a fiduciary one that encompasses the healthcare providers' arrangement of "the financing at issue after plaintiffs' treatment had already begun." Though it is generally accepted that a fiduciary relationship exists between a physician and a patient, it does not follow that such a fiduciary relationship extends to financial transactions between physicians and patients. The only support Plaintiffs offer for this proposition is a citation to 61 *Am. Jr. 2d., Physicians, Surgeons, and Other Healers*, § 143 which states that "transactions between physician and patient are closely scrutinized by the courts, which must be assured of the fairness of those dealings." None of the cases cited in support of this proposition, however, deal with a financial agreement in any way. *See Campbell v. Oliva*, 424 F.2d 1244 (6th Cir. 1970); *Kopprasch v. Stone*, 340 Mich. 384, 65 N.W.2d 852 (1954); *Houghton v. West*, 305 S.W.2d 407 (Mo. 1957); *In re Hendricks' Estate*, 110 N.W.2d 417 (N.D. 1961); *Clinton v. Miller*, 1919 OK 266, 77 Okla. 173, 186 P. 932 (1919). Instead, the 'transactions' referenced involved the provision of medical care.

Furthermore, while Illinois law does recognize a physician-patient fiduciary relationship, there is no support for the contention that this duty extends to *commercial* transactions. Though Plaintiffs argue that "after the inception of a fiduciary relationship, transactions between the fiduciary and beneficiary are presumptive (sic) invalid", Plaintiffs cite no authority to show that in the context of the physician-patient relationship, transactions outside of medical treatment, such as financing through CareCredit, are subject to the fiduciary relationship. Moreover, Illinois courts have suggested that the fiduciary relationship does not extend to commercial transactions. In *Neade v. Portes*, 739 N.E.2d 496, 503-04 (Ill. 2000), the Illinois Supreme Court examined whether a breach of fiduciary duty existed where a doctor failed to disclose financial incentives

offered by third party HMOs in a suit brought against the doctor for medical negligence. There, plaintiff alleged that had the physician disclosed certain financial incentives, the plaintiff would have sought a second medical opinion. *Id*. at 503. The Illinois Supreme Court noted that while Illinois courts recognize a fiduciary relationship between a physician and a patient, they "have never recognized a cause of action for breach of fiduciary duty against a physician." *Nead*, 739 N.E.2d at 500. Specifically, the court held that "[w]e decline to recognize a new cause of action for breach of fiduciary duty against a physician for the physician's failure to disclose HMO incentives in a suit brought against the physician for medical negligence." *Id*. at 505. Though here, no claim for medical negligence is asserted, the court does not indicate that in the absence of a medical negligence claim, there would have been a breach in fiduciary duty. Moreover, in *Nead*, a failure to disclose allegedly resulted in a physical injury, rather than the financial injury asserted here. In *Hill v. Sisters of St. Francis Health Servs., Inc.*, No. 06 C 1488, 2006 WL 3783415, at *3 (N.D. Ill. Dec. 20, 2006), this court held that there is no fiduciary duty between a hospital and a patient regarding billing practices. Though Plaintiffs assert that "the financing and payment for Plaintiffs' medical treatment is undoubtedly within the scope of the fiduciary relationship," this statement is unsupported by any citation to law.

Similarly, Indiana law does not support a fiduciary relationship between a physician and patient as to commercial transactions. The duty of a physician to a patient arises out of the contractual relationship between them. *Walker v. Rinck*, 604 N.E.2d 591, 594 (Ind. 1992). This duty does not extend to unknown third parties. *Id*. at 595. The parties have cited no cases, nor has this court found a case, to support the proposition that Indiana law recognizes a fiduciary

6

relationship between a physician and a patient which extends to the formation of financial contracts.

I do not find that the fiduciary relationship between a physician and a patient extends to financing matters such as those asserted here. Accordingly, I am unpersuaded that the arbitration clause is invalid based on Defendants' alleged inducement of health care providers to breach their fiduciary duty.

Second, Plaintiffs argue that the arbitration clause and the choice of law provision materially limit the patient's rights against the health care provider. Specifically, Plaintiffs argue that the arbitration clause is objectionable because it requires arbitration of malpractice claims and "limited redress for conduct that the fiduciary was already engaging in, without disclosure of either conduct or limitation." No authority is cited for this proposition. Here, the credit card agreements contained arbitration clauses that were disclosed in the application, close to the signature line, and each plaintiff was afforded the opportunity to opt out of arbitration as a dispute resolution mechanism within 60 days of signing the agreement. The Gillispie arbitration clause requires arbitration of any dispute "that arises from or relates to your credit card account, the relationships that result from your account, this Agreement, or any prior agreement or credit card account, including the enforceability or scope of this provision." This does not, on its face, purport to encompass any pre-existing malpractice claims. The language of the Jezek/Moritz agreement provides that "[y]ou and we must arbitrate individually any dispute or claim between you, any joint cardholder, and/or any additional cardholder, on the one hand; and us, our affiliates, agents, and/or dealers/merchants/retailers or participating professionals, on the other hand, if the dispute or claim arises from or relates to your account." Again, this language does not appear to

cover pre-existing malpractice claims. I do not find that the patients' rights were impermissibly limited by the CareCredit agreement.

Third, Plaintiffs argue that neither of the selected arbitrators is available to arbitrate the dispute. The arbitration clause in the Jezek and Moritz contracts permit arbitration before either the AAA or JAMS. Plaintiffs do not contend that JAMS is not available as an arbitration forum, and accordingly, their argument as to Jezek and Moritz fails. The Gillispie arbitration clause allows for arbitration before AAA or NAF. Defendants do not dispute that NAF is not an available forum, however, they do argue that AAA is an available forum. Plaintiffs argue that AAA is unavailable based on a July 27, 2009 press release from the AAA announcing a temporary moratorium for consumer debt collection arbitrations. Cases included in this moratorium include: "consumer debt collections programs or bulk filings and individual case filings in which the company is the filing party and the consumer has not agreed to arbitrate at the time of the dispute and the case involves a credit card bill or, the case involves a telecom bill or the case involves a consumer finance matter." The AAA continues "to administer all demands for arbitration filed by consumers against businesses, and all other types of consumer arbitrations." Here, Defendants have not initiated this suit and are not pursuing a debt collection claim against Plaintiffs. As noted in *Estep v. World Finance Corp. of Ill.*, 735 F.Supp.2d 1028, 1029-30 (C.D. Ill. 2010), where an individual consumer is the filing party in the arbitration, the AAA will administer the matter. Accordingly, Plaintiffs' argument that arbitration is unavailable fails. In the event that arbitration is denied, the matter may be referred back to this Court.

Finally, Plaintiffs argue that Defendants have waived any right to arbitrate by asking the Court to rule on the merits. This argument is also unavailing. The law allows a party to seek relief

in the alternative. A defendant does not waive arbitration by filing a motion to dismiss concurrently with a motion to compel. *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 562 (7th Cir. 2008); *Sharif v. Wellness Int'l Network., Inc.*, 376 F.3d 720, 726 (7th Cir. 2004).

## III. CONCLUSION

For the foregoing reasons, Defendants' motion to compel arbitration is granted.

ENTER:

James B. Zagel
United States District Judge

DATE: July 18, 2011